254 So.2d 425

**Guy F. PARKER and E. F. Mauldin, et al.**

**v.**

**Robert SUTTON and Coy Sutton.**

**8 Div. 51.**

Court of Civil Appeals of Alabama.

Sept. 22, 1971.

Rehearing Denied Oct. 13, 1971.

354

Calvin, Gilchrist & Murphree, Decatur, for appellants E. F. Mauldin and Preuit and Mauldin, a partnership.

Harris, Harris, Shinn & Harris, Decatur, for appellant Guy Parker.

Bedford & Bedford, Russellville, Speake & Speake, Moulton, for appellees.

WRIGHT, Judge.

Suit was brought by Robert and Coy Sutton against E. F. Mauldin, Guy Parker and Preuit and Mauldin, a partnership. The suit contained three counts. Count I was in detinue. Count II in trespass for a wrongful taking, and Count III was for conversion of personal property. The property involved and referred to in all counts

was a 1962 Model 414 International two-row cotton picker. Upon presentation of plaintiffs' case, without any evidence presented by any of the defendants, the cause was submitted to the jury. Among written charges requested by the plaintiff and given by the court, was the affirmative charge with hypothesis. Verdict of the jury was general and awarded plaintiffs damages in the amount of $10,000 against the defendants. Motion for a new trial was made and denied.

Appeal was filed by all defendants except Guy Parker, who subsequently joined in the appeal and assigned separate error as allowed and provided for in Title 7, Section 804, Code of Alabama 1940 (recompiled 1958). Most of the errors assigned by the separate appellants are identical. We shall discuss those initially.

█ Appellants contend that the verdict of the jury is excessive. There appears little doubt that the major portion of the award represents punitive damages against the appellants. There is equally little or no question but that the verdict of the jury was upon one or the other of Counts II or III. The form of the verdict certainly could not be directed to the detinue count as it did not refer to the property sued for nor to its alternate value or damage for detention. Thus we must consider the verdict as referring to either the trespass or the conversion count. Which of these counts the verdict may be considered as applicable to is of no consequence so far as we can see. Our examination of the evidence convinces us that it supports either count. Further, a verdict under either count, dependent upon the state of the evidence, may include punitive damages. Roan v. Smith, 272 Ala. 538, 133 So.2d 224; Carolina Casualty Ins. Co. v. Tisdale, 46 Ala.App. 50, 237 So.2d 855 (cert. denied.)

Before further discussing the award of damages, a better understanding of our ruling will be possible by a brief résumé of the events giving rise to this suit.

During the first week in Sptember 1963, appellees visited the place of business of appellants, E. F. Mauldin or Preuit and Mauldin. This business, apparently operated by Mauldin, sold mechanical cotton pickers. It appears there had been some previous discussion concerning the purchase by appellees of a new picker. This had not been possible because financing could not be arranged. There was on the premises of Preuit and Mauldin a used picker which was either owned or had previously been owned by appellant Parker. This picker was offered to appellees for $11,750. The payment for this picker, after a $2,000 down payment, was to be made in payments over the next two years. Appellees wre directed to appellant Parker for information concerning the condition of the picker.

After trying out the picker, appellees paid the down payment with borrowed money and signed a conditional sales contract for the balance. This contract contained the schedule and amount of future payments and the amount of the total sales price. The first payment was to be due November 1, 1963.

Two or three weeks after the sale of the picker, appellant Mauldin and an employee, Neal, appeared in the field where the picker was being operated and informed appellees that a mistake had been made in the contract amounting to some $2,000. It would be necessary for appellees to sign a new contract or pay immediately an additional $2,000. Appellees refused to comply. After other approaches for the same purpose, Mauldin and appellant Parker, on the 7th of October 1963, appeared at a cotton gin where appellees were and one or both informed appellees that the new contract would have to be signed or they would pick up the picker. They were again refused. Later in the day these appellants came to a field where the picker was being used and informed one of the appellees they had to take it unless the contract was signed. Appellee told them not to take the picker and went to another field to discuss the

matter with his brother. While he was gone appellant Mauldin stopped the operator of the picker, directed appellees' employee to get off, mounted it and drove it away. Appellant Parker was present with Mauldin when this occurred. Appellees saw the cotton picker no more. There was no return or offer to return the $2,000 down payment. Appellees had picked approximately 70 bales of cotton with the picker for which they were paid $30 per bale. The evidence tended to show that 300 bales a season could be picked by such a picker.

■ The measure of compensatory damages for conversion of a mortgaged chattel by a mortgagee is the value of the equity or special property of the mortgagor. Such value amounts to the difference between the reasonable fair market value and the balance due on the mortgage debt at the time of conversion, together with interest from the date of conversion. Armstrong v. Farrell, 267 Ala. 606, 104 So.2d 309

■ To such compensatory damages the jury may add punitive damages if the trespass or conversion was willful, fraudulent, done in known violation of law or attended with circumstance of malice, insult or disregard of the rights or interest of the mortgagor. Roan v. Smith, supra; Russell-Vaughn Ford, Inc. v. Rouse, 281 Ala. 567, 206 So.2d 371.

■■ Without becoming involved in calculations as to a division of the verdict into compensatory and punitive damages, it clearly appears the verdict involved more than a compensatory award. We think the evidence included facts, with reasonable inferences possible to be drawn therefrom, to fully support an award of punitive damages. The amount of such damages is a matter for the discretion of the jury and will not be set aside on appeal unless it is so great, unjust and grossly excessive as to indicate bias and undue prejudice by the jury. Mercury Freight Lines, Inc. v. Pharo, 264 Ala. 322, 87 So.2d 642. After careful

consideration of the evidence and of the fact that a motion for new trial containing the ground of excessiveness of the verdict was denied by the trial court, we cannot hold contrary to the court below. The verdict of the jury is supported by the evidence. We cannot say it is excessive. Austin v. Tennessee Biscuit Co., 255 Ala. 573, 52 So.2d 190.

■ Assignment of error 2 is directed at the overruling of a motion for a mistrial made by appellants' attorney during the trial. The motion was made following an exchange between counsel, during which counsel for appellees commented upon the continued absence of appellant Mauldin from the courtroom.

On the first day of trial a witness had been excused from the rule at the request of appellants' counsel because appellant Mauldin was not present in court. Apparently counsel for appellees did not wish the witness to remain in the courtroom. On the second day of the trial the presence of the witness at the counsel table was observed, objected to by counsel for appellees and motion made that he be placed under the rule. Counsel for appellants informed the court that Mauldin would be present in a few minutes. The following remark was then made by counsel for appellees: "I mean he hasn't seen fit to show his presence and I don't see why he's got a right to come in court. He has completely defied all bounds of reason." After this remark, motion for mistrial was made and was overruled.

We are required by this assignment of error to examine the remarks complained of, the scene in the courtroom at the time they were made, and the entire record for the purpose of determining if substantial prejudice resulted to appellants therefrom. St. Clair Co. v. Martin, 273 Ala. 302, 139 So.2d 617. The trial court had to make a similar determination at the time of the motion for mistrial and on the motion for new trial since the matter was one of the grounds of the latter. On both oc-

casions the trial court found that no prejudice resulted to appellants. Our consideration of the same matter must be accompanied by the presumption that the trial court was in a much better position to observe the effect of the remarks objected to upon the jury than is this Court. Grandquest v. Williams, 273 Ala. 140, 135 So.2d 391. It is our considered opinion that there is no indication from the entire record that the occurrence of this particular statement by counsel prejudicially affected the jury's verdict. Birmingham Electric Co. v. Perkins, 249 Ala. 426, 31 So.2d 640.

Though the court did not immediately inform the jury they should not consider nor be influenced by these particular remarks of counsel, admonition not to consider remarks and arguments of counsel as evidence was included in the oral charge.

■ Assignment of error 3 condemns the giving of the following writtten charge at the request of plaintiffs: "The court charges the jury that in the assessment of punitive damages which may be awarded under Count II of the complaint, the jury may give such punishment as in their judgment the evidence authorizes not in excess of the sum sued for in the plaintiffs' complaint."

Substantially the same charge is set out in Alabama Jury Instructions, Vol. 1, Sec. 2265. It was approved to be properly given in the cases of Southern Ry. Co. v. Sherrill, 232 Ala. 184, 167 So. 731; Ala. Great Sou. R. R. Co. v. Frazier, 93 Ala. 45, 9 So. 303. It is clearly lacking in detail and tends to be misleading in its narrowness of scope. However, we cannot hold its giving to be reversible error. It was within the right of appellant to request a sufficiently expanded explanatory charge.

■ Assignment of error 6 is directed at the giving of plaintiffs' Charge IT–16. We see no necessity to set this charge out here. It is paraphrased from a charge contained in Alabama Jury Instructions, Vol. 1, Sec. 2256. This charge was directed to Count II of the complaint as was charge 18, discussed above.

Appellants observe in brief that Charge IT–16 was considered and found acceptable in the case of Sheffield Company v. Harris, 183 Ala. 357, 61 So. 88. They submit that though approved there the charge was bad under the facts here. We do not approve of the giving of this charge in this case or any case, however, we do not think the giving of it in this case was reversible error. Charge 16 is more definitive and less misleading in our opinion than charge 18. Though both charges 16 and 18 tend to be misleading and abstract, an explanatory charge or charges would have been the proper remedy for appellants. Police & Firemen's Ins. Ass'n v. Mullins, 260 Ala. 173, 69 So.2d 261; Roan v. Smith, supra. The oral charge of the court contained an adequate explanation and definition of punitive damages for the jury's direction. The usual statement as to the relation of the oral and written charges was given by the court. We do not find that the given charges were so misleading or abstract to be prejudicial. Neither do we find any indication in the record that the jury was misled thereby.

None of the appellants chose to take the stand and deny the acts attributed to them by the plaintiffs. Considering the uncontradicted evidence, we cannot say that the amount of the verdict is any indication that the given charges complained of did mislead and prejudice the jury.

■ Having considered all the assignments of error of appellants Mauldin, and Preuit and Mauldin, a partnership, we come to the only assignment of appellant Parker not in common with the other appellants. Appellant Parker submits that his motion for new trial should have been granted because the verdict against him was contrary to the great weight of the evidence.

The theme of the argument of appellant Parker is that the evidence only showed him to be present with appellant Mauldin at the time the picker was taken, and no

evidence was presented showing his connection with or active participation in the taking or conversion. We are unable to accept appellant Parker's contention.

We have previously pointed out herein that Parker was present with Mauldin on at least two occasions on the day of the taking of the picker. The witnesses categorized the words spoken and the actions taken on that date as being joint with Mauldin and Parker. Though Mauldin physically took and drove away the picker from the possession of appellees, the testimony and its reasonable inference was that Parker accompanied, encouraged, aided, assisted or directed Mauldin in the taking. It was shown that at some time prior to the purchase of the picker by appellees it was owned by Parker. From this fact, together with his presence, it could be reasonably inferred that he still claimed an interest in it at the time it was taken from appellees. The evidence and inferences therefrom were strengthened in the minds of the jury by the failure of Parker or any other defendant to deny or rebut such evidence by testifying in the case. The verdict against all defendants is fully supported by the evidence.

Since there is reference herein to actions of counsel during the course of the trial, we think it fair to counsel representing appellants on appeal to state that none of them were counsel during the trial in the lower court.

Appellants not having shown reversible error, the verdict and judgment below is due to be affirmed.

Affirmed.

THAGARD, P. J., not sitting.

## ON REHEARING

Appellants on application for rehearing, among other matters, take issue with the use of the word "willful" in the following statement in paragraph three, page 428 of our original opinion:

"To such compensatory damages the jury may add punitive damages if the trespass or conversion was willful, fraudulent, done in known violation of law or attended with circumstance of malice, insult or disregard of the rights or interest of the mortgagor. Roan v. Smith, supra; Russell-Vaughn Ford, Inc. v. Rouse, 281 Ala. 567, 206 So.2d 371."

It is appellants argument that we have extended the rule of law applicable to the award of punitive damages in the actions of trespass to or conversion of chattels. They contend that no case previously has used the word "willful" as descriptive of the act from which exemplary or punitive damages may be awarded at the discretion of the jury. An examination of the cases cited indicates that appellants are correct in stating that the word willful does not appear in them as we used it in our opinion. We do not agree that our use of "willful" in our opinion extends the rule in such cases. The connotation of the word "willful" as we used it and as it appears almost invariably in legal phraseology is one of premeditated wrong, an act done with evil intent or bad motive or purpose, unlawful, and without legal justification. It implies not only the voluntary and intentional doing of an act, but also the intending of the result which follows from the doing of the act. Such is the meaning of the word as it is found in our penal statutes and as it is used in describing a tortious act or injury. Potter v. United States, 155 U.S. 438, 15 S.Ct. 144, 39 L.Ed. 214; Birmingham Ry., Light & Power Co. v. Norton, 7 Ala.App. 571, 61 So. 459; Adler v. Martin, 179 Ala. 97, 59 So. 597. Vol. 45, Words and Phrases, p. 359.

Until called to our attention by appellants in this instance we had not

thought of the following quotation from the case of Roan v. McCaleb, 264 Ala. 31, 84 So.2d 358, as being in the conjunctive.

"If the conversion was committed in known violation of the law and of plaintiff's rights *with* circumstances of insult, or contumely, or malice, punitive damages were recoverable in the discretion of the jury. (Emphasis supplied)."

Upon consideration now we do not conclude that the conjunctive is intended or required in the above quotation. It appears from a legal sense the statement is redundant rather than conjunctive. It would be difficult, if not impossible, to conceive of a conversion or a trespass committed in *known* violation of the law and of plaintiffs' rights not to be accompanied by insult, contumely or malice. The "known," intentional and "willful" violation of the law and of plaintiffs' rights in and of itself is legal insult, contumely and malice. The first phrase of the quotation is a good definition of malice in law. Black's Law Dictionary, Revised Fourth Edition defines malice in law as "the intentional doing of a wrongful act without just cause or excuse."

To conclude, we think that upon the commission of any tortious act, including trespass to or conversion of personal property, committed willfully, in known violation of the law and of plaintiffs' rights, the jury in its discretion and under proper instructions may award punitive damages.

This extension of our original opinion is merely in amplification and explanation of the statement therein challenged on application for rehearing and is not intended to enlarge or change the same.

Other matters presented on application for rehearing are not considered to require further comment.

Opinion extended—application denied.